FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
Attorney for Debtors and Debtors in Possession
One New York Plaza
New York, NY 10004
(212) 859-8000
Attn:  Bonnie Steingart, Esq.
       Kalman Ochs, Esq.
       Christopher R. Bryant, Esq.


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
|                                                      | )  |
| In re:                                               | )  |
|                                                      | )  |
| DONNKENNY, INC.                                      | )  | Chapter 11
| BELDOCH INDUSTRIES CORPORATION,                      | )  | Case Nos.  05-10712
| CHRISTIANSBURG GARMENT COMPANY, INC.,                | )  | through 05-10716 (RDD)
| DONNKENNY APPAREL, INC., AND                         | )  |
| H SQUARED DISPOSITIONS, INC.                         | )  | Jointly Administered
|                                                      | )  |
| Debtors.                                             | )  |
|                                                      | )  |
———————————————————————


————————————————————————————

**MODIFIED SECOND AMENDED CHAPTER 11 PLAN**
————————————————————————————


Dated:  New York, New York
        May 12, 2005

# TABLE OF CONTENTS

ARTICLE ONE DEFINITIONS, RULES OF INTERPRETATION,  COMPUTATION OF TIME AND GOVERNING LAW ..................................................................................6

ARTICLE TWO PROVISIONS FOR TREATMENT OF ADMINISTRATIVE EXPENSES ....14

    2.01.  Administrative Expenses. .....................................................................14

ARTICLE THREE PROVISIONS FOR TREATMENT OF PRIORITY TAX CLAIMS ..........15

    3.01.  Priority Tax Claims. ..............................................................................15

ARTICLE FOUR CLASSIFICATION OF CLAIMS AND INTERESTS ...................................15

    4.01.  Designation of Classes ..........................................................................15

    4.02.  Claims. ....................................................................................................15

    4.03.  Interests. .................................................................................................15

ARTICLE FIVE IDENTIFICATION OF CLASSES OF CLAIMS AND  INTERESTS IMPAIRED AND NOT IMPAIRED BY THIS PLAN ...............................................16

    5.01.  Classes of Claims and Interests Impaired by this Plan and Entitled to Vote ..........16

    5.02.  Class of Claims and Interests Impaired by this Plan and Deemed to Reject this Plan..................................................................................................16

    5.03.  Classes of Claims Not Impaired by this Plan and Conclusively Presumed to Accept this Plan ...................................................................................16

ARTICLE SIX PROVISIONS FOR TREATMENT OF  CLAIMS AND INTERESTS..............16

    6.01.  Priority Claims (Class 1)........................................................................16

    6.02.  Pre-Petition Credit Agreement Claims (Class 2). ....................................16

    6.03.  Miscellaneous Secured Claims (Class 3). ...............................................17

    6.04.  General Unsecured Claims (Class 4). ......................................................17

    6.05.  Intercompany Claims (Class 5)...............................................................18

    6.06.  Interests (Class 6)...................................................................................18

ARTICLE SEVEN ACCEPTANCE OR REJECTION OF THIS PLAN;  EFFECT OF REJECTION BY ONE OR MORE IMPAIRED  CLASSES OF CLAIMS OR INTERESTS .....18

7.01.  Acceptance by an Impaired Class of Creditors ........................................................18

7.02.  Confirmation Pursuant to section 1129(b) of the Bankruptcy Code .......................18

ARTICLE EIGHT EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......................18

8.01.  Assumption and Rejection of Executory Contracts and Unexpired Leases ............18

8.02.  Employee Benefit Plans ..........................................................................................18

8.03.  Bar Date for Rejection Damages .............................................................................19

ARTICLE NINE IMPLEMENTATION OF THIS PLAN ...........................................................19

9.01.  Funding of Administrative Expenses, Priority Claims, and Priority Tax Claims ...................................................................................................................19

9.02.  Vesting of Property ..................................................................................................19

9.03.  Substantive Consolidation ......................................................................................19

9.04.  Retention and Enforcement of Causes of Action ....................................................20

9.05.  Implementation .......................................................................................................20

9.06.  Plan Administrator ..................................................................................................20

9.07.  Agents of the Plan Administrator ............................................................................21

9.08.  Cancellation of Existing Securities and Agreements ..............................................21

9.09.  Dissolution ..............................................................................................................21

9.10.  Directors of the Post-Effective Date Debtors .........................................................22

9.11.  Officers of the Debtors ............................................................................................22

9.12.  Closing of Cases .....................................................................................................22

9.13.  Transactions on Business Days ...............................................................................22

9.14.  Effectuating Documents; Further Transactions ......................................................22

ARTICLE TEN PROVISIONS COVERING DISTRIBUTIONS ................................................22

10.01.  Timing of Distributions Under this Plan ...............................................................22

10.02. Allocation of Consideration ........................................................................22

10.03. Cash Payments ........................................................................................22

10.04. Payment of Statutory Fees ......................................................................23

10.05. No Interest ..............................................................................................23

10.06. Special Provision Regarding Unimpaired Claims ..................................23

10.07. Compliance with Tax Requirements .......................................................23

10.08. Distribution Record Date ........................................................................23

10.09. Surrender of Existing Securities .............................................................24

10.10. Undeliverable or Unclaimed Distributions .............................................24

10.11. Exemption From Certain Transfer Taxes ...............................................24

ARTICLE ELEVEN PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND
DISPUTED INTERESTS ......................................................................................25

11.01. Objections to Claims; Disputed Claims .................................................25

11.02. Estimation of Claims ..............................................................................25

11.03. Payments and Distributions With Respect to Disputed Claims and
Disputed Interests .................................................................................25

11.04. Timing of Payments and Distributions With Respect to Disputed Claims
and Disputed Interests ..........................................................................25

11.05. Setoffs ....................................................................................................26

11.06. Prosecution of Objections ......................................................................26

ARTICLE TWELVE INJUNCTION, RELEASES AND SETTLEMENTS OF CLAIMS ..........26

12.01. Releases ..................................................................................................26

12.02. Exculpation ............................................................................................27

12.03. Injunction ...............................................................................................27

12.04. Guarantees and Claims of Subordination. .............................................27

ARTICLE THIRTEEN CONFIRMATION AND EFFECTIVE DATE .......................................28

13.01. Conditions to Entry of the Confirmation Order .....................................................28

13.02. Conditions to Effective Date............................................................................29

13.03. Waiver of Conditions......................................................................................29

13.04. Effect of Failure of Conditions ........................................................................29

ARTICLE FOURTEEN MISCELLANEOUS PROVISIONS ....................................................30

14.01. Court to Retain Jurisdiction ..............................................................................30

14.02. Binding Effect of this Plan................................................................................30

14.03. Authorization of Corporate Action .....................................................................30

14.04. Withdrawal of this Plan ...................................................................................31

14.05. Captions ....................................................................................................31

14.06. Record Date for Voting Purposes .......................................................................31

14.07. Method of Notice ..........................................................................................31

14.08. Dissolution of any Committee ...........................................................................32

14.09. Amendments and Modifications to Plan.................................................................32

14.10. Section 1125(e) of the Bankruptcy Code................................................................32

14.11. Post-Confirmation Obligations ..........................................................................33

14.12. Severability of Plan Provisions...........................................................................33

14.13. Successors and Assigns....................................................................................33

14.14. Compromises and Settlements............................................................................33

14.15. Waiver of Bankruptcy Rules 3020(e) and 7062 .......................................................34

# DEBTORS' CHAPTER 11 PLAN

All Donn, Inc. f/k/a Donnkenny, Inc. ("Donnkenny"), Beldoch Industries Corporation ("Beldoch"), Christiansburg Garment Company, Inc. ("Christiansburg"), All Donn Apparel, Inc. f/k/a Donnkenny Apparel, Inc. ("DK Apparel"), and H Squared Dispositions, Inc. ("H Squared"), the above-captioned Debtors and Debtors in Possession, hereby propose the following Second Amended Chapter 11 Plan (the "Plan") pursuant to section 1121(a) of the Bankruptcy Code.

## ARTICLE ONE
## DEFINITIONS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

A.      SCOPE OF DEFINITIONS; RULES OF CONSTRUCTION

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article One of this Plan.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.  Whenever the context requires, such terms shall include the plural as well as the singular number; the masculine gender shall include the feminine and neutral, and the feminine gender shall include the masculine and neutral.

B.      DEFINITIONS

Administrative Expense:  Collectively, (a) any cost or expense of administration of the Chapter 11 Cases allowed under section 503(b) of the Bankruptcy Code and (b) the Bankruptcy Fees.

Affiliates:  As defined in section 101 of the Bankruptcy Code.

Allowed:  With respect to Claims and Interests, (a) any Claim against or Interest in a Debtor, proof of which is timely filed, or which by order of the Court or pursuant to this Plan, is not or will not be required to be filed, (b) any Claim or Interest that has been or is hereafter listed in the Schedules as neither disputed, contingent or unliquidated, and for which no timely proof of claim has been filed, or (c) any Claim or Interest allowed pursuant to this Plan; provided, however, that with respect to any Claim or Interest described in clauses (a) or (b) above, such Claim or Interest shall be allowed only if (i) no objection to the allowance thereof has been interposed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Court or (ii) such an objection is so interposed and the Claim or Interest shall have been allowed by a Final Order (but only if such allowance was not solely for the purpose of voting to accept or reject this plan).  Except as otherwise specified in this Plan or a Final Order of the Court, the amount of an allowed Claim shall not include interest on such Claim from and after the Petition Date.  All Claims of the DIP Agent, the DIP Lenders and the Pre-Petition Credit Agreement Lenders arising under the DIP Facility are Allowed Claims.

Ballot:  The ballot distributed, together with the Disclosure Statement, to holders of Pre-Petition Credit Agreement Claims and Miscellaneous Secured Claims for the purpose of acceptance or rejection of this Plan.

Bankruptcy Code:  Title 11 of the United States Code, as amended from time to time, as applicable during the Chapter 11 Cases.

Bankruptcy Fees.  Any fees or charges assessed against the Debtors' estates under section 1930 of title 28 of the United States Code.

Bankruptcy Rules:  The Federal Rules of Bankruptcy Procedure, promulgated under section 2075 of title 28 of the United States Code and the local rules for the United States District Court and the United States Bankruptcy Court for the Southern District of New York, each as amended from time to time, as applicable during the Chapter 11 Cases.

Bar Date:  The date designated by the Court as the last day for filing a Proof of Claim against the Debtors.

Business Day:  Any day other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

Cash:  Legal tender of the United States of America.

Causes of Action:  Any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

Chapter 11 Cases:  The respective cases under chapter 11 of the Bankruptcy Code concerning the Debtors commenced on the Petition Date.

CIT:  The CIT Group/Commercial Services, Inc., together with its successors and assigns.

Claim:  Any right to (a) payment from the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or (b) an equitable remedy for breach of performance of the Debtors if such breach gives rise to a right to payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

Committee:  Any committee appointed pursuant to section 1102(a) of the Bankruptcy Code in the Chapter 11 Cases.

Common Stock:  Donnkenny's common stock, par value $.01 per share, issued and outstanding as of the Petition Date.

Confirmation Date:  The date on which the Confirmation Order is entered on the docket maintained by the clerk of the Court with respect to the Chapter 11 Cases.

Confirmation Hearing:  The hearing held by the Court pursuant to section 1128(a) of the Bankruptcy Code regarding the confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

Confirmation Order:  The order of the Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

Court:  The United States Bankruptcy Court for the Southern District of New York, or any other court having jurisdiction over the Chapter 11 Cases.

Creditor:  Any Entity that is the Holder of a Claim against any of the Debtors that arose on or before the Petition Date or a Claim against any of the Debtors' estates of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code.

Creditors' Committee:  The Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code on February 14, 2005, as the same may be constituted from time to time.

Debtors:  Collectively, Donnkenny, Beldoch, Christiansburg, DK Apparel, and H Squared.

DIP Agent:  CIT, as Agent under the DIP Facility.

DIP Facility:  The Pre-Petition Credit Agreement and Factoring Agreement, as amended and ratified by that certain Ratification and Amendment Agreement, dated as of February 9, 2005, and all ancillary documents related thereto, as authorized and approved by the Final DIP Order.

DIP Lenders:  CIT and Wells Fargo Century, Inc. (together with its successors and assigns), the lenders under the DIP Facility.

Disclosure Statement:  The disclosure statement related to this Plan.

Disputed:  With respect to Claims or Interests, any Claim or Interest that is not Allowed.

Distribution Record Date:  The date established in the Confirmation Order for determining the identity of Holders of Allowed Claims and Allowed Interests entitled to distributions under this Plan.

Effective Date:  The first Business Day immediately following the date upon which all conditions to the Effective Date set forth in Section 13.02 of this Plan have been satisfied or waived by the Debtors or the Plan Administrator (any such waiver requiring CIT's and the Committee's prior written consent, which consent shall not be unreasonably withheld),

as the case may be; provided, however, that if a stay of the Confirmation Order is in effect on such date, the Effective Date will be the first Business Day after such stay is no longer in effect.

Entity:  Any individual, corporation, limited or general partnership, limited liability company, joint venture, association, joint stock company, estate, entity, trust, trustee, United States Trustee, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof.

Factoring Agreement:  Collectively, the Factoring Agreement, dated April 28, 1997, between Beldoch and CIT, and the Factoring Agreement, dated April 28, 1997, between DK Apparel and CIT.

Final DIP Order:  The Final Order (A) Authorizing Debtors to Obtain Post-Petition Financing and Factoring and Grant Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105 and 364(c); (B) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; and (C) Authorizing Debtors to Enter Into Agreements With CIT, in its Capacity as Agent for Itself and Certain lenders, and in its Capacity as Factor, entered by the Court on March 29, 2005.

Final Order:  An order, ruling or judgment of the Court or any other court of competent jurisdiction, which has not been reversed, vacated or stayed and as to which the time to appeal, petition for *certiorari*, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing will then be pending, or as to which any right to appeal, petition for *certiorari*, reargue, or rehear will have been waived in writing in form and substance satisfactory to the Debtors or, on and after the Effective Date, the Plan Administrator or, in the event that an appeal, writ of *certiorari*, or reargument or rehearing thereof has been sought, such order of the Court or other court of competent jurisdiction will have been determined by the highest court to which such order was appealed, or *certiorari*, reargument or rehearing will have been denied and the time to take any further appeal, petition for *certiorari* or move for reargument or rehearing will have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order will not cause such order not to be a Final Order.

General Unsecured Claim:  Any Claim other than an Administrative Expense, Pre-Petition Credit Agreement Claim, Miscellaneous Secured Claim, Intercompany Claim, Priority Claim, or Priority Tax Claim.  Any pre-petition unsecured deficiency Claim resulting from the Pre-Petition Credit Agreement shall be treated as a General Unsecured Claim in accordance with the terms and conditions of the DIP Facility, as expressly modified by the Letter Agreement.

General Unsecured Claims Distribution:  Subject to, and in accordance with the terms of the Letter Agreement, (1) $100,000 in Cash, plus (2) the General Unsecured Preference Recoveries, plus (3) the Non-Preference Recoveries, if any.

General Unsecured Preference Recoveries:  Subject to, and in accordance with the terms of the Letter Agreement, (1) 100% of the first $250,000 of Preference Recoveries, (2) 0% of Preference Recoveries between $250,000 and $500,000, (3) 50% of Preference Recoveries between $500,000 and $1,000,000, and (4) 10% of Preference Recoveries over $1,000,000.

Holder:  Any Entity that holds a Claim or Interest.

Impaired:  Any Claim or Interest that is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

Instrument:  Any share of stock, security, promissory note or other "Instrument" within the meaning of that term as defined in section 9-102(47) of the Uniform Commercial Code.

Intercompany Claim:  Any Claims between and among a Debtor and another Debtor or Debtors.

Interests:  The equity interests in the Debtors including, but not limited to, (a) those represented by shares of Common Stock and Subsidiary Common Stock and any options, warrants, calls, subscriptions or other similar rights or other agreements, commitments or outstanding securities obligating any Debtor to issue, transfer or sell any shares of Common Stock or Subsidiary Common Stock, and (b) Claims of the type described in, and subject to subordination under, section 510(b) of the Bankruptcy Code.

Letter Agreement:  The letter agreement, dated as of March 29, 2005, between CIT and the Creditors' Committee, attached hereto as Exhibit A, and incorporated herein.

Lien:  The meaning set forth in section 101(37) of the Bankruptcy Code; except that a Lien that has been avoided in accordance with a provision of the Bankruptcy Code, including, without limitation, sections 544, 545, 546, 547, 548 or 549, shall not constitute a Lien.

Miscellaneous Secured Claim:  Any Claim that is (i) a "secured" claim within the meaning of, and to the extent allowable as a secured claim under, section 506 of the Bankruptcy Code, and is otherwise valid, binding and non-avoidable, other than a Pre-Petition Credit Agreement Claim and (ii) secured by a valid nonavoidable lien that is senior to the liens of the Pre-Petition Credit Agreement Claims.  It is anticipated that there are no Miscellaneous Secured Claims.

Non-Preference Actions:  Causes of Action which may exist under sections 510, 542, 544 through 546, 548, 549, 550 (to the extent applicable to sections 544, 545, 548, 549 and 553), and 553 of the Bankruptcy Code, or under similar state laws, which are preserved pursuant to section 9.04 of this Plan excluding any (i) Causes of Action released or exculpated by Sections 12.01, 12.02 and 12.03 of this Plan (ii) any Causes of Action that are either waived, released, or otherwise not timely and successfully pursued pursuant to Section 4 of the Final DIP Order or Section 7 of the Letter Agreement, and (iii) any Causes of Action under the above-described sections of the Bankruptcy Code, or under similar state laws that relate to the collection of any trace account receivable of any Debtor.

Non-Preference Recoveries:  The aggregate recoveries from the prosecution of Non-Preference Actions, net of collection costs and expenses related thereto.

Petition Date:  February 7, 2005, the date on which the Debtors filed with the Court their voluntary petitions for relief commencing the Chapter 11 Cases.

Plan:  This Second Amended Chapter 11 Plan, together with all exhibits hereto, as the same may be amended or modified from time to time.

Plan Administration Agreement:  The agreement drafted by the Creditors' Committee other than the portion thereof incorporating the terms of the Letter Agreement, which shall be attached and incorporated therein, that sets forth the terms and conditions upon which the Plan Administrator will be retained and the Plan Administrator's duties, powers, and obligations, and which shall be reasonably acceptable to the Debtors  and CIT, whose consent shall not be unreasonably withheld.  The Plan Administration Agreement shall fully adopt and incorporate all of the terms and provisions of the Letter Agreement, which shall not be amended without the prior written consent of the Creditors' Committee and CIT.  The Plan Administration Agreement will be filed by the Creditors' Committee with the Court no later than five (5) days prior to the Confirmation Date, unless such time is extended by order of the Court.

Plan Administrator:  The Entity agreed to and designated by the Creditors' Committee and CIT, which shall be reasonably acceptable to the Debtors, whose consent shall not be unreasonably withheld, to administer the Post-Effective Date Debtors for the purpose of making distributions required under this Plan, winding-up the business affairs of the Post-Effective Date Debtors, and performing such other duties as set forth in the Plan Administration Agreement.  The Debtors shall identify the Plan Administrator, if any, and its compensation, which compensation terms shall be satisfactory to CIT and the Creditors' Committee, no later than five (5) days prior to the Confirmation Date.

Post-Effective Date Debtors:  The Debtors on and after the Effective Date, which shall survive the Effective Date for the limited purposes set forth in this Plan.

Pre-Petition Credit Agreement:  The Credit Agreement, dated as of June 29, 1999, as amended, modified or supplemented from time to time immediately prior to the Petition Date, among DK Apparel and Beldoch, as Borrowers, Donnkenny, Christiansburg, and H Squared as Guarantors, the Pre-Petition Credit Agreement Lenders, as Lender, and CIT, as Agent.

Pre-Petition Credit Agreement Claims:  Any and all Claims in respect of, or in connection with, all or any portion of the aggregate outstanding principal and accrued and unpaid interest, cost and expenses due and owing under the Pre-Petition Credit Agreement, Factoring Agreement, and the DIP Facility, and subject to the respective terms and provisions thereof.

Pre-Petition Credit Agreement Lenders:  CIT, and the other lenders party to the Pre-Petition Credit Agreement as of the Petition Date.

Pre-Petition Credit Agreement Preference Recoveries:  Subject to and in accordance with the Letter Agreement, (1) 0% of the first $250,000 of Preference Recoveries, (2) 100% of Preference Recoveries between $250,000 and $500,000, (3) 50% of Preference

Recoveries between $500,000 and $1,000,000, and (4) 90% of Preference Recoveries over $1,000,000.

Preference Actions:  Causes of Action which may exist under section 547 of the Bankruptcy Code and section 550 of the Bankruptcy Code (to the extent applicable to section 547 of the Bankruptcy Code), or under similar state laws, which are preserved pursuant to section 9.04 of this Plan, and any and all Causes of Action under chapter 5 of the Bankruptcy Code or under similar state laws that relate to the collection of any trade account receivable of any Debtor.

Preference Recoveries:  The aggregate recoveries from the prosecution of Preference Actions, net of collection costs and expenses related thereto.

Priority Claim:  Any Claim, other than a Priority Tax Claim or an Administrative Expense, which is entitled to priority in payment under section 507(a) of the Bankruptcy Code.

Priority Tax Claim:  Any Claim which is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

Professional:  Any professional employed in the Chapter 11 Cases pursuant to section 327, 328 or 1103 of the Bankruptcy Code and any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

Proof of Claim:  As defined in Bankruptcy Rule 3001.

Proof of Interest:  A written statement setting forth a Holder's Interest in the Debtors.

Purchase Agreement:  The purchase agreement dated February 4, 2005, by and among the Debtors and the Purchaser for the sale of the Purchased Assets by the Debtors to the Purchaser.

Purchased Assets:  Those assets of the Debtors being sold to the Purchaser pursuant to the Purchase Agreement and the Sale Motion and under, in furtherance and contemplation of, this Plan.

Purchaser:  The purchaser of the Purchased Assets identified in the Purchase Agreement and the Sale Motion.

Reserve Funding:  The funding by CIT under the DIP Facility, including without limitation, the Budget annexed to the Final DIP Order setting forth projected financial information relating to, among other things, the payment of Allowed Claims entitled to payment under the Plan.  The Reserve Funding shall also include (i) the full utilization of the Professional Fee Carve-Out (as defined in the Final DIP Order) in accordance with the Final DIP Order, and (ii) $50,000 paid by the Purchaser in the Sale Transaction for the use by the Debtors or the Plan Administrator to pay the Allowed Claims entitled to payment under the Plan.

Sale Motion:  The motion filed by the Debtors on the Petition Date pursuant to section 363 of the Bankruptcy Code seeking authority to, among other things, sell the Purchased Assets to the Purchaser pursuant to the Purchase Agreement, under, in furtherance and contemplation of, this Plan.

Schedules:  The schedules of assets and liabilities and the statements of financial affairs filed or to be filed, as the case may be, in the Chapter 11 Cases by the Debtors, as such schedules or statements may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Court.

Secured Distribution:  (1) Subject to the satisfaction of any Miscellaneous Secured Claims, the proceeds from the sale of the Purchased Assets to the Purchaser, such proceeds being distributed to the Holders of the Pre-Petition Credit Agreement Claims upon the consummation of the Sale Transaction, (2) all Receivables (as such term is defined in the Pre-Petition Credit Agreement, as ratified and amended by the Ratification and Amendment Agreement) and all other items of Collateral and Factoring Collateral (as each term is defined in the Final DIP Order) other than Non-Preference Recoveries, and Preference Recoveries, in accordance with the DIP Facility, and (3) subject to the terms of the Letter Agreement, Non-Preference Recoveries, and Preference Recoveries.

Subsidiary Common Stock:  Collectively, any and all authorized, issued and outstanding equity interests in each of the Debtors other than Donnkenny.

Subsidiary Common Stock Interests:  The Interests represented by the shares of Subsidiary Common Stock.

Tax:  "Tax" and "Taxes" include all taxes, charges, fees, duties, levies, imposts, rates or other assessments imposed by any federal, state, local or foreign governmental unit, including, but not limited to, income, gross receipts, excise, property, sales, stamp, use, license, capital stock, transfer, franchise, payroll, withholding, social security, value added and other taxes, and any interest, penalties, fines, losses, damages, costs or additions attributable thereto.

Tax Code:  The Internal Revenue Code of 1986, as amended.

Tax Return:  Any return, report, certificate, form or similar statement or document (including any related or supporting information or schedule attached thereto and any information return, amended tax return, claim for refund or declaration of estimated tax) required to be supplied to, or filed with, a taxing authority in connection with the determination, assessment or collection of any Tax or the administration of any laws, regulations or administrative requirements relating to any Tax.

Unimpaired:  Any Claim or Interest that is not Impaired.

C.    RULES OF INTERPRETATION

For purposes of the Plan (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such

terms and conditions; (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules, and Exhibits are references to Sections, Articles, Schedules, and Exhibits of or to the Plan; (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (f) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply. All exhibits and schedules to the Plan are incorporated into the Plan and shall be deemed to be included in, and made a part of, the Plan, as if fully set forth herein.

D.      COMPUTATION OF TIME

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE TWO
## PROVISIONS FOR TREATMENT OF ADMINISTRATIVE EXPENSES

2.01.      Administrative Expenses.

(a)      Treatment. The Debtors or the Plan Administrator, as the case may be, will pay each Allowed Administrative Expense in full, in Cash, or in such other lesser amount and/or in some other form of payment as the Holder of such Administrative Expense may agree, on the later of (i) the Effective Date, (ii) the date on which the Bankruptcy Court enters an order allowing such Administrative Expense, and (iii) the date on which the Debtors and the Holder of such Allowed Administrative Expense otherwise agree, provided, however, that the obligations incurred under the DIP Facility will be satisfied by the treatment provided to Holders of the Pre-Petition Credit Agreement Claims under section 6.02 hereof, provided, further, however, that obligations incurred by the Debtors to Professionals for services provided through the Effective Date will be paid in accordance with the Court order approving the fees and expenses of each such Professional and subject to the terms provided in this Plan; provided, further, however, that Allowed Administrative Expenses incurred by the Debtors after the Confirmation Date, including, without limitation, claims for Professionals' fees and expenses, will not require application to the Court and may be paid, by the Plan Administrator in the ordinary course of business and without further Court approval, unless either the Debtors, the Creditors' Committee or CIT object to the payment of such fees, in which case the payment shall require Court approval; provided, further, however, that the Bankruptcy Fees shall be paid until the Court enters a final decree closing the Chapter 11 Cases. Reimbursement of fees and expenses of professionals retained by the Plan Administrator will be made pursuant to Section 9.06 hereof and the terms and conditions set forth in the Plan Administration Agreement without the need for application to, or approval from, the Court, unless either the Post-Effective Date Debtors, the Creditors' Committee or CIT object to the payment of such fees, in which case the payment shall require Court approval.

(b)      Full Settlement. As more specifically set forth in, and without in any way limiting, Section 12.01 of this Plan, the distributions provided for in this Section 2.01

are in full settlement and release of all Administrative Expenses.

## ARTICLE THREE
## PROVISIONS FOR TREATMENT OF PRIORITY TAX CLAIMS

3.01.    Priority Tax Claims.

(a)    Treatment.  With respect to each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will be (i) paid in full in Cash by the Debtors or the Plan Administrator, as the case may be, on or as soon as practicable after the Effective Date, or (ii) given such other treatment agreed to by the Holder of such Allowed Priority Tax Claim and the Debtors.

(b)    Full Settlement.  As more specifically set forth in, and without in any way limiting, Section 12.01 of this Plan, the distributions provided for in this Section 3.01 are in full settlement and release of all Priority Tax Claims.

## ARTICLE FOUR
## CLASSIFICATION OF CLAIMS AND INTERESTS

4.01.    Designation of Classes.  Pursuant to sections 1122 and 1123(a) of the Bankruptcy Code, set forth below is a designation of classes of Claims and Interests. Administrative Expenses and Priority Tax Claims of the kinds specified in sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code (set forth in Articles Two and Three, above) have not been classified and are excluded from the following classes in accordance with section 1123(a)(l) of the Bankruptcy Code.

4.02.    Claims.

Class 1.    Class 1 consists of all Priority Claims.

Class 2.    Class 2 consists of Pre-Petition Credit Agreement Claims.

Class 3.    Class 3 consists of all Miscellaneous Secured Claims.

Class 4.    Class 4 consists of all General Unsecured Claims.

Class 5.    Class 5 consists of all Intercompany Claims.

4.03.    Interests.

Class 6.    Class 6 consists of all Interests.

**ARTICLE FIVE**
**IDENTIFICATION OF CLASSES OF CLAIMS AND**
**INTERESTS IMPAIRED AND NOT IMPAIRED BY THIS PLAN**

5.01.     Classes of Claims and Interests Impaired by this Plan and Entitled to Vote. Pre-Petition Credit Agreement Claims (Class 2) and Miscellaneous Secured Claims (Class 3) are Impaired by this Plan and the Holders of Allowed Claims in such classes are entitled to vote to accept or reject this Plan.

5.02.     Class of Claims and Interests Impaired by this Plan and Deemed to Reject this Plan. General Unsecured Claims (Class 4), Intercompany Claims (Class 5), and Interests (Class 6), are Impaired and are not entitled to receive or retain any property under this Plan; provided, however, in order to facilitate a consensual plan, the Holders of Pre-Petition Credit Agreement Claims will consent to the distribution of the General Unsecured Distribution to the Holders of General Unsecured Claims subject to the terms and conditions of the Letter Agreement.  Under section 1126(g) of the Bankruptcy Code, the Holders of such Interests are deemed to reject this Plan and the votes of such Holders will not be solicited.

5.03.     Classes of Claims Not Impaired by this Plan and Conclusively Presumed to Accept this Plan. Priority Claims (Class 1) are not Impaired by this Plan.  Under section 1126(f) of the Bankruptcy Code, the Holders of such Claims are conclusively presumed to accept this Plan, and the votes of such Holders will not be solicited.


**ARTICLE SIX**
**PROVISIONS FOR TREATMENT OF**
**CLAIMS AND INTERESTS**

6.01.     Priority Claims (Class 1).

(a)     Treatment.  On the latest of (a) the Effective Date, (b) the date on which such Priority Claim becomes an Allowed Priority Claim, or (c) the date on which the Debtors and the Holder of such Allowed Priority Claim otherwise agree, each Holder of an Allowed Priority Claim shall be entitled to receive Cash in an amount sufficient to render such Allowed Priority Claim Unimpaired under section 1124 of the Bankruptcy Code.

(b)     Full Settlement.  As more specifically set forth in, and without in any way limiting Section 12.01 of this Plan, the distributions provided in this Section 6.01 are in full settlement and release of each Holder's Priority Claim and all other Claims against any and all of the Debtors, if any, of such Holder directly or indirectly related to or arising out of the transactions, agreements or instruments upon which such Priority Claim was based.  Class 1 is Unimpaired.

6.02.     Pre-Petition Credit Agreement Claims (Class 2).

(a)     Treatment.  Each Holder of an Allowed Pre-Petition Credit Agreement Claim will be entitled to receive its pro rata share of the Secured Distribution upon consummation of the Sale Transaction and in accordance with the DIP Facility; provided,

however, that the portion of the Secured Distribution consisting of Non-Preference Recoveries, and Preference Recoveries shall be distributed in accordance with the Letter Agreement; and provided further that the Holders of Allowed Pre-Petition Credit Agreement Claims may elect to have the Secured Distribution or any portion thereof delivered to a designee, trust, or other Entity.

(b)     Full Settlement.  As more specifically set forth in, and without in any way limiting Section 12.01 of this Plan, all distributions being made or to be made to the Holders of Pre-Petition Credit Agreement Claims provided in this Section 6.02 are in full settlement and release of each Holder's Pre-Petition Credit Agreement Claim and all other Claims against any and all of the Debtors, if any, of such Holder directly or indirectly related to or arising out of the transactions, agreements or instruments upon which such Pre-Petition Credit Agreement Claim was based.  Upon all distributions having been made to the Holders of Pre-Petition Credit Agreement Claims provided in this Section 6.02, the aggregate effect of making all such distributions shall be in full settlement and release of any obligations arising and outstanding under the DIP Facility.  Class 2 is Impaired.

6.03.     Miscellaneous Secured Claims (Class 3).

(a)     Treatment.  On the Effective Date, at the option of the Debtors, either (i) the Debtors will surrender the collateral securing such Allowed Miscellaneous Secured Claim to the Holder thereof or (ii) the Holder will retain its liens on the collateral securing such Allowed Claim and such Allowed Claim will be paid over that amount of time and with such interest necessary satisfy the requirements of section 1129(b)(2)(A)(II) of the Bankruptcy Code.

(b)     Full Settlement.  As more specifically set forth in, and without in any way limiting Section 12.01 of this Plan, the distributions provided in this Section 6.03 are in full settlement and release of each Holder's Miscellaneous Secured Claim and all other Claims against any and all of the Debtors, if any, of such Holder directly or indirectly related to or arising out of the transactions, agreements or instruments upon which such Miscellaneous Secured Claim was based.  Class 3 is Impaired.

6.04.     General Unsecured Claims (Class 4).

(a)     Treatment.  Based on the value of the Debtors, the Holders of General Unsecured Claims are not entitled to receive any distribution under this Plan.  However, in order to facilitate a consensual plan, the Holders of Pre-Petition Credit Agreement Claims will consent to the distribution of the General Unsecured Distribution to the Holders of General Unsecured Claims in accordance with the Letter Agreement.  Each Holder of an Allowed General Unsecured Claim will receive its pro rata share of the General Unsecured Claims Distribution, to be distributed in accordance with the Letter Agreement.  To the extent that the terms of this Section 6.04 vary with the terms of the Letter Agreement, the Letter Agreement shall be controlling.

(b)     Full Settlement.  As more specifically set forth in, and without in any way limiting Section 12.01 of this Plan, the benefits provided in this Section 6.04 to the Holders of General Unsecured Claims are in full settlement and release of each Holder's General

Unsecured Claim and all other Claims against any and all of the Debtors, if any, of such Holder directly or indirectly related to or arising out of the transaction, agreements or instruments upon which such General Unsecured Claim was based. Class 4 is Impaired.

6.05. <u>Intercompany Claims</u> (Class 5). On the Effective Date, all Intercompany Claims will be extinguished and no distributions will be made to Holders of Intercompany Claims. The Holders of Intercompany Claims are not entitled to receive any distribution or retain any property under the Plan. Class 5 is Impaired.

6.06. <u>Interests</u> (Class 6). On the Effective Date, all Interests will be extinguished and no distributions will be made to Holders of Interests. Holders of Interests are not entitled to receive any distribution or retain any property under the Plan. Class 6 is Impaired.

## ARTICLE SEVEN
## ACCEPTANCE OR REJECTION OF THIS PLAN;
## EFFECT OF REJECTION BY ONE OR MORE IMPAIRED
## CLASSES OF CLAIMS OR INTERESTS

7.01. <u>Acceptance by an Impaired Class of Creditors</u>. Consistent with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired class of Claims will have accepted this Plan if this Plan is accepted by Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject this Plan.

7.02. <u>Confirmation Pursuant to section 1129(b) of the Bankruptcy Code</u>. Because General Unsecured Claims (Class 4), Intercompany Claims (Class 5) and Interests (Class 6) are Impaired and are deemed to have rejected this Plan, the Debtors intend to request that the Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code.

## ARTICLE EIGHT
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.01. <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>. Each executory contract or unexpired lease that has not been expressly assumed or rejected pursuant to section 365 of the Bankruptcy Code with approval by order of the Court on or prior to the Confirmation Date shall, as of the Confirmation Date, be deemed to have been rejected by the Debtors.

8.02. <u>Employee Benefit Plans</u>. Subject to the occurrence of the Effective Date, any and all employee benefit plans, policies, and programs of the Debtors (including, without limitation, all savings plans, retention plans, retirement pension plans, health care plans, disability plans, severance benefit plans, life, accidental death, dismemberment insurance plans, vacation, and sick leave pay, employee equity, or equity-based incentive plans) shall be cancelled, and all of the Debtors' obligations thereunder shall be terminated.

8.03.     Bar Date for Rejection Damages.  Unless otherwise provided by an order of the Court entered prior to the Confirmation Date, Claims arising out of the rejection of an executory contract or unexpired lease pursuant to Section 8.01 hereof, or any employee benefit plan, policy or program of the Debtors pursuant to Section 8.02 hereof, must be filed no later than twenty (20) days after service of the notice of the entry of the Confirmation Order.  Any Entity that fails to file a Proof of Claim with respect to its Claim arising from such a rejection within the period set forth above will be forever barred from asserting a Claim against the Debtors, the Post-Effective Date Debtors, any other entity, their estates or their respective property or interests in property.  All Allowed Claims arising from the rejection of executory contracts or unexpired leases or employee benefit plans, policies or programs of the Debtors will be classified as General Unsecured Claims (Class 4).

# ARTICLE NINE
## IMPLEMENTATION OF THIS PLAN

9.01.     Funding of Administrative Expenses, Priority Claims, and Priority Tax Claims.  It is contemplated that the Budget annexed to the Final DIP Order reasonably projects all Allowed Administrative Expenses, Allowed Priority Claims, and Allowed Priority Tax Claims, which Budget shall be funded by the DIP Agent and DIP Lenders in accordance with the DIP Facility including, without limitation, utilizing the Professional Fee Carve-Out to fund Allowed Professional Fees in accordance with the Final DIP Order.  In order to facilitate a consensual plan, the Holders of Pre-Petition Credit Agreement Claims have, in their sole discretion, elected to fund and provide the Cash portion of the General Unsecured Claims Distribution in the amount of $100,000 to be distributed to the Holders of General Unsecured Claims and provide other distributions in accordance with the Letter Agreement.  Additionally, the Purchaser has agreed to fund the amount of $50,000 towards the payment of expenses incurred in connection with consummating this Plan.

9.02.     Vesting of Property.  On the Effective Date, title to all remaining property of the Debtors' estates will pass to and vest in the Post-Effective Date Debtors, free and clear of all Claims, Interests, Liens, security interests, charges and other encumbrances (except for (i) the Claims and Liens of the DIP Agent, the DIP Lenders, and the Pre-Petition Credit Agreement Lenders in accordance with the DIP Facility and (ii) as otherwise provided in this Plan).  To the extent that any assets of the Post-Effective Date Debtors, including, but not limited to, the Reserve Funding, remain on the date that the Plan Administrator dissolves the Post-Effective Date Debtors, all such assets shall be distributed by the Plan Administrator pro rata to all Holders of Pre-Petition Credit Agreement Claims free and clear of all Claims, Interests, Liens, security interests, charges and other encumbrances.

9.03.     Substantive Consolidation.  This Plan contemplates entry of the Confirmation Order effecting the substantive consolidation of the Chapter 11 Cases of the Debtors into a single Chapter 11 Case solely for the purposes of all actions associated with confirmation and consummation of this Plan.  On the Confirmation Date or such other date as may be set by a Final Order of the Court, but subject to the occurrence of the Effective Date: (i) solely for the purposes of this Plan and the distributions and transactions contemplated hereby, all assets and liabilities of the Debtors shall be treated as though they were merged;

(ii) any obligation of any Debtor and all guarantees thereof executed by one or more of the Debtors shall be deemed to be one obligation of the consolidated Debtors; (iii) any Claims filed or to be filed in connection with any such obligation and such guarantees shall be deemed one Claim against the consolidated Debtors; (iv) each and every Claim filed in the individual Chapter 11 Case of any of the Debtors shall be deemed filed against the consolidated Debtors in the consolidated Chapter 11 Case of the Debtors and shall be deemed a single obligation of all of the Debtors under this Plan on and after the Confirmation Date; (v) all duplicative claims (identical in both amount and subject matter) filed against more than one of the Debtors will be automatically expunged so that only one Claim survives against the consolidated Debtors but in no way shall such claim be deemed Allowed by reason of this Section 9.02; and (vi) the consolidated Debtors will be deemed, for purposes of determining the availability of the right of set-off under section 553 of the Bankruptcy Code, to be one entity, so that, subject to other provisions of section 553 of the Bankruptcy Code, the debts due to a particular Debtor may be offset against claims against such Debtor or another Debtor; provided, however, that nothing herein shall affect the obligations of each of the Debtors under this Plan, including, without limitation, with respect to each Debtor's respective obligations relating to payment of the Bankruptcy Fees.

    9.04.  <u>Retention and Enforcement of Causes of Action</u>.  Subject to Section 12.01 of this Plan, and pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Post-Effective Date Debtors, by and through the Plan Administrator, will retain the exclusive right to enforce, in their sole discretion, any and all Causes of Action of the Debtors, including, but not limited to, the Non-Preference Actions and Preference Actions, and all other Causes of Action of a trustee and debtor in possession under the Bankruptcy Code; excluding any Causes of Action released or exculpated by Section 12.01, 12.02 and 12.03 of the Plan or Causes of Action that are either waived, released or otherwise not timely and successfully pursued pursuant to Section 4 of the Final DIP Order or Section 7 of the Letter Agreement.  At this time, the Debtors have not conducted an analysis to determine the existence of any Non-Preference Actions or Preference Actions or the amount of any Non-Preference Recoveries or Preference Recoveries.  The Debtors have cooperated with CIT and the Creditors' Committee, and will continue to cooperate with Cit and the Creditors' Committee, in connection with their requests for information related to potential Non-Preference Actions and Preference Actions.

    9.05.  <u>Implementation</u>.  Pursuant to the Confirmation Order and upon confirmation of this Plan, the Debtors or the Plan Administrator, as the case may be, will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan.  Moreover, on or before the Effective Date, the Debtors may file with the Court such other agreements and documents as may be necessary or appropriate to effectuate or further evidence the terms and conditions of this Plan.  The Debtors or the Plan Administrator, as the case may be, are hereby authorized to execute any documents and such other agreements and documents and take such other actions as are necessary to effectuate the transactions provided for in this Plan, upon CIT's and the Creditors' Committee's approval and consent, which consent shall not be unreasonably withheld.

    9.06.  <u>Plan Administrator</u>.  On and after the Effective Date, the Plan Administrator will be the sole authorized representative and signatory of the Post-Effective Date Debtors, with authority to render any and all services necessary to effectuate the terms of the

Plan. The Plan Administrator, as more fully set forth in the Plan Administration Agreement, shall be responsible for administering and distributing the assets of the Debtors' estates, winding-up the Debtors' business affairs, resolving Disputed Claims, pursuing Non-Preference Actions and Preference Actions, and taking any and all other actions authorized in this Plan and shall have full power and authority to access the Reserve Funding and the assets and property of the Debtors' estates pursuant to the Plan. The Plan Administrator shall also be vested with all rights, powers and benefits afforded to a "trustee" under the Bankruptcy Code, and shall comply with all of the Bankruptcy Code's requirements of a "trustee", including, but not limited to, the bonding requirements set forth in section 322 of the Bankruptcy Code.

9.07.     Agents of the Plan Administrator. The Plan Administrator, as more fully set forth in the Plan Administration Agreement, may employ and compensate professionals as deemed appropriate (including, but not limited to the Debtors' former officers, employees and professionals and the Creditors' Committee's Professionals) to assist in the performance of the Plan Administrator's duties under the Plan, including making required distributions, preparing and filing tax returns, and winding-up the Post-Effective Date Debtors business affairs. As more fully set forth in the Plan Administration Agreement, the Plan Administrator and its professionals shall be entitled to reasonable compensation. Professionals retained by the Plan Administrator shall submit a monthly statement of fees and expenses incurred in the performance of their duties to the Plan Administrator, CIT, and the Creditors' Committee. If the Plan Administrator, CIT, or the Creditors' Committee does not object to the monthly statements within ten (10) days after the receipt of such statements, then the Plan Administrator shall be authorized to pay such fees and such expenses. In the event the Plan Administrator, CIT, or the Creditors' Committee objects within such ten (10) day period, and the Plan Administrator, CIT, or the Creditors' Committee and the professional cannot resolve the objection, then the disputed portion of the fees and expenses shall be submitted to the Bankruptcy Court for determination, and the undisputed portion may be immediately paid.

9.08.     Cancellation of Existing Securities and Agreements. On the Effective Date, the Pre-Petition Credit Agreement, Factoring Agreement, and Interests, as well as any and all securities or agreements relating to the Pre-Petition Credit Agreement, Factoring Agreement, and Interests, shall be deemed canceled, terminated and of no further force or effect.

9.09.     Dissolution. On and after the Effective Date, the Post-Effective Date Debtors will remain in existence for the sole purpose of permitting the Plan Administrator to wind-up the Post-Effective Date Debtors' business affairs and administer the Plan, including, but not limited to, making distributions required to be made under the Plan. Upon the administration of all assets of the Post-Effective Date Debtors' estates pursuant to this Plan and the filing by the Plan Administrator of a certificate to that effect with the Bankruptcy Court, the Post-Effective Date Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Post-Effective Date Debtors or payments to be made in connection therewith; provided, however, that the Plan Administrator on behalf of the Post-Effective Date Debtors shall file with the appropriate state authority a certificate or statement of dissolution referencing this Plan. From and after the Effective Date, neither the Post-Effective Date Debtors nor the Plan Administrator shall be required to file any document, or take any action, to withdraw the Debtors' business operations from any states in which the Debtors previously were incorporated or conducted business operations.

9.10.    Directors of the Post-Effective Date Debtors.  On the Effective Date, the operations of the Debtors will cease and the members of the Debtors' respective boards of directors shall be deemed to have been terminated without the necessity for any further action or writing.  On the Effective Date, the Plan Administrator will be the sole authorized representative and signatory of the Post-Effective Date Debtors, with authority to render any and all services necessary to effectuate the terms of this Plan.

9.11.    Officers of the Debtors.  On the Effective Date, the Debtors' operations will cease and the Debtors' respective executive officers shall be deemed to have been terminated without the necessity for any further action or writing.

9.12.    Closing of Cases.  Upon the satisfaction of all outstanding liabilities and obligations under and in accordance with this Plan, the Plan Administrator shall promptly prepare and file with the Bankruptcy Court all documents, make all payments in respect of the Bankruptcy Fees, and shall take all other steps necessary to close the Chapter 11 Cases pursuant to section 350 of the Bankruptcy Code.  The Plan Administrator shall file such reports as may be required by the Bankruptcy Rules or otherwise.

9.13.    Transactions on Business Days.  If the Effective Date or any other date on which a transaction may occur under this Plan will occur on a day that is not a Business Day, the transactions contemplated by this Plan to occur on such day will instead occur on the next succeeding Business Day.

9.14.    Effectuating Documents; Further Transactions.  The Debtors and the Plan Administrator shall be authorized to execute, deliver, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

## ARTICLE TEN
## PROVISIONS COVERING DISTRIBUTIONS

10.01.    Timing of Distributions Under this Plan.  Except as otherwise provided in this Plan, without in any way limiting Section 9.07 and Article 11 of this Plan, and subject to Section 14.02 below, payments and distributions in respect of Allowed Claims will be made by the Plan Administrator on or as promptly as practicable after the Effective Date.  That portion of the Secured Distribution that consists of Preference Recoveries, as well as that portion of the General Unsecured Claims Distribution that consists of Preference Recoveries and Non-Preference Recoveries, shall be distributed in accordance with the Plan Administration Agreement.

10.02.    Allocation of Consideration.  The aggregate consideration to be distributed to the Holders of Allowed Claims in each class under this Plan shall be treated as first satisfying an amount equal to the stated principal amount of the Allowed Claim for such Holders and any remaining consideration as satisfying accrued, but unpaid, interest, if any.

10.03.    Cash Payments.  Cash payments made pursuant to this Plan will be in U.S. dollars.  Cash payments to foreign Creditors may be made, at the option of the Debtors or Plan

Administrator, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.  Cash payments made pursuant to this Plan in the form of checks issued by the Debtors or the Plan Administrator shall be null and void if not cashed within thirty (30) days of the date of the issuance thereof.  Requests for reissuance of any check shall be made directly to the Plan Administrator as set forth in Section 10.10 below.

       10.04.     Payment of Statutory Fees.  All Bankruptcy Fees payable pursuant to 28 U.S.C. § 1930 as determined by the Court shall be paid by the Debtors on or before the Effective Date, or by the Plan Administrator as soon as practicable thereafter, and, in any event, until the Court enters a final decree closing the Chapter 11 Cases.

       10.05.     No Interest.  Except with respect to Holders of Unimpaired Claims entitled to interest under applicable non-bankruptcy law or as otherwise expressly provided herein, no Holder of an Allowed Claim shall receive interest on the distribution or benefit to which such Holder receives hereunder, regardless of whether such distribution or benefit is made on the Effective Date or thereafter.

       10.06.     Special Provision Regarding Unimpaired Claims.  Except as otherwise provided in this Plan, the Confirmation Order, any other order of the Court, or any document or agreement entered into and enforceable pursuant to the terms of this Plan, nothing will affect the Debtors' or Plan Administrators' rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against Unimpaired Claims or to request disallowance or subordination of any such Claim.  In addition, notwithstanding anything to the contrary, Unimpaired Claims are subject to all applicable provisions of the Bankruptcy Code, including, without limitation, section 502(b) of the Bankruptcy Code.

       10.07.     Compliance with Tax Requirements.  In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) and/or withholding is required, the Debtors or the Plan Administrator will file such information return with the Internal Revenue Service, provide any required statements in connection therewith to the recipients of such distribution and/or effect any such withholding and deposit all moneys so withheld as required by law.  With respect to any Entity from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Debtors or the Plan Administrator, the Debtors or the Plan Administrator will withhold the amount required and distribute the balance to such Entity.

       10.08.     Distribution Record Date.  As of the close of business on the Distribution Record Date, the claims register shall be closed, and there shall be no further changes in the record Holders of any Claims or Interests.  The Debtors, the Plan Administrator or their designees, shall not have an obligation to recognize any transfer of any Claims or Interests occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under this Plan (except as to voting to accept or reject this Plan) with only those holders of record as of the close of business on the Distribution Record Date.  In the event of any dispute regarding the identity of any party entitled to any

payment or distribution in respect of any Claim under this Plan, no payments or distributions will be made in respect of such Claim until the Court resolves that dispute pursuant to a Final Order.

10.09.     Surrender of Existing Securities.  As a condition to receiving any distribution or benefit under this Plan, and except as otherwise provided in Section 10.11 hereof, each Holder of an Instrument evidencing a Claim must surrender such Instrument to the Debtors or Plan Administrator.  Any Holder of an Instrument evidencing a Claim that fails to (a) surrender such Instrument or (b) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Debtors or Plan Administrator before the later to occur of thirty (30) days after (i) the Effective Date or (ii)  the date such Holder's Claim becomes an Allowed Claim, shall be deemed to have forfeited all rights, Claims, and/or Interests and may not participate in any distribution or benefit under this Plan.  Upon compliance with this Section 10.09, the Holder of a Claim or Interest evidenced by any such lost, stolen, mutilated or destroyed Instrument will, for all purposes under this Plan, be deemed to have surrendered such Instrument.

10.10.     Undeliverable or Unclaimed Distributions.  Any Entity that receives a Cash distribution or benefit under this Plan but that fails to cash a check within thirty (30) days of its issuance shall not be entitled to receive any distribution or benefit under this Plan.  If the distribution or benefit to any Holder of an Allowed Claim is returned to the Plan Administrator as undeliverable, no further distributions or benefits will be made to such Holder unless and until the Plan Administrator is notified in writing of such Holder's then-current address. Undeliverable distributions will remain in the possession of the Plan Administrator until such time as a distribution becomes deliverable, but in any event not longer than thirty (30) days.  All claims for undeliverable distributions or benefits must be made on or before the later to occur of (i) thirty (30) days following the Effective Date and (ii) thirty (30) days following the date such Holder's Claim becomes an Allowed Claim.  After such date, all unclaimed property shall be distributed pro rata to all Holders of Pre-Petition Credit Agreement Claims and the Claim of any Holder or successor to such Holder with respect to such property shall be forever barred notwithstanding any federal or state escheat laws to the contrary.

10.11.     Exemption From Certain Transfer Taxes.  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an Instrument of transfer from a Debtor or a Post-Effective Date Debtor to the Plan Administrator or any other person or Entity pursuant to this Plan, including, without limitation the sale of the Purchased Assets to the Purchaser under, in furtherance or contemplation of, this Plan, will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

# ARTICLE ELEVEN
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND DISPUTED INTERESTS

11.01.    _Objections to Claims; Disputed Claims_.  Except with respect to the fee Claims of Professionals, only the Plan Administrator or its designee shall have the authority to file, settle, compromise, withdraw or litigate to judgment objections to Claims after the Effective Date.  Subject to an order of the Court providing otherwise, the Plan Administrator may object to Administrative Expenses and Claims by filing an objection with the Court and serving such objection upon the Holder of such Administrative Expense or Claim not later than one hundred and twenty (120) days after the Effective Date or one hundred and twenty (120) days after the filing of a request for payment of an Administrative Expense or the proof of such Claim, whichever is later, or such other date determined by the Court upon motion to the Court, which motion may be made without further notice or hearing.

11.02.    _Estimation of Claims_.  The Debtors or Plan Administrator, as the case may be, may, at any time, request that the Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors have previously objected to such Claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection.  In the event the Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim.  All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.  Claims may be estimated and thereafter resolved by any permitted mechanism.  On and after the Effective Date, except to the extent that the Plan Administrator consents, or with respect to the fee Claims of Professionals, only the Plan Administrator will have the authority to file, settle, compromise, withdraw, or litigate to judgment objections to, and requests for estimation of, Administrative Expenses and Claims.

11.03.    _Payments and Distributions With Respect to Disputed Claims and Disputed Interests_.  No payments or distributions will be made in respect of a Disputed Claim or a Disputed Interest until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest.

11.04.    _Timing of Payments and Distributions With Respect to Disputed Claims and Disputed Interests_.  Subject to the provisions of this Plan, payments and distributions with respect to each Disputed Claim or Disputed Interest that becomes an Allowed Claim or Allowed Interest, that would have otherwise been made had such Claim or Interest been an Allowed Claim or Allowed Interest on the Effective Date, will be made promptly after the date that such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest.  Holders of Disputed Claims or Disputed Interests, regardless of whether such Disputed Claims or Disputed Interests become Allowed Claims or Allowed Interests, will be bound, obligated and governed in all respects by the provisions of this Plan.

11.05.    Setoffs.  The Debtors, the Plan Administrator or their designees as instructed by them may (but will not be required), pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim or Allowed Interest, and the distributions to be made pursuant to this Plan on account of such Claim or Interest, claims of any nature whatsoever that the Debtors or the Plan Administrator or their successors may hold against the Holder of such Allowed Claim or Allowed Interest; provided, however, that neither the failure to effect a setoff nor the allowance of any Claim or Interest hereunder will constitute a waiver or release by the Debtors or the Plan Administrator or their successors of any such claims that the Debtors or the Plan Administrator or their successors may possess against such Holders, unless an order allowing such Claim or Interest otherwise so provides.

11.06.    Prosecution of Objections.  After the Confirmation Date, the Debtors shall have the authority to file objections, settle, compromise, withdraw, or litigate to judgment objections to Claims or Interests.  From and after the Effective Date, the Plan Administrator may settle or compromise any Disputed Claim or Interest without approval of the Court.

## ARTICLE TWELVE
## INJUNCTION, RELEASES AND SETTLEMENTS OF CLAIMS

12.01.    **Releases.**

(a)    **[Intentionally Omitted]**


(b)    **[Intentionally Omitted]**


**(c)    Except as otherwise specifically provided by this Plan or the Confirmation Order, the confirmation of this Plan (subject to the occurrence of the Effective Date) shall act as a release of all Causes of Action (including without limitation, Causes of Action of a trustee and debtor in possession under the Bankruptcy Code) of the Debtors and the Post-Effective Date Debtors, whether known or unknown, against: (i) their present and former directors, officers and employees, agents, attorneys, advisors, accountants, financial advisors, investment bankers; advisors, investment bankers, advisory affiliates, employees, agents, successors and assigns, (ii) the Pre-Petition Credit Agreement Lenders, the DIP Agent, and the DIP Lenders, their present and former directors, officers and employees, attorneys, successors and assigns, and (iii) any Entity (other than the Plan Administrator) claimed to be liable derivatively through any of the foregoing, subject to the rights of the Plan Administrator, on behalf of the Creditors, to investigate and pursue any Cause of Action against any Entity under this Section 12.01(c) except as provided in Section 12.02 below, and with respect to the Pre-Petition Credit Agreement Lenders, the DIP Agent, and the DIP Lenders and their present and former directors, officers and employees, attorneys, successors and assigns, against whom the Plan Administrator shall not have, and shall be deemed to have irrevocably waived and released, any right to investigate and/or pursue any Cause of Action against the Pre-Petition Credit Agreement Lenders, the DIP Agent, and the DIP Lenders in accordance**

with the releases afforded the Pre-Petition Credit Agreement Lenders, the DIP Agent, and the DIP Lenders under the DIP Facility, the Letter Agreement or otherwise.

**(d)     Provided, however, that nothing in any section of this Plan shall effect a release in favor of any Entity with respect to any debt owed to the United States Government, any state, city, or municipality, for any liability of such Entity arising under (i) the Internal Revenue Code, or any state, city, or municipal tax code, (ii) the environmental laws of the United States, any state, city, or municipality, (iii) any criminal laws of the United States, any state, city, or municipality, or (iv) any applicable federal securities laws of the United States.**

**12.02.     Exculpation.  The Debtors, the Plan Administrator, the Creditors' Committee, the Pre-Petition Credit Agreement Lenders, the DIP Agent, and the DIP Lenders, and each of their respective present and former officers, directors, members, employees, and agents of the foregoing (including any professionals retained by such persons or entities) will have no liability to any Entity for any act or omission in connection with, or arising out of, the pursuit of approval of this Plan or the Disclosure Statement or the solicitation of votes for or confirmation of the Plan, or the consummation of the Plan, or the transactions contemplated and effectuated by the Plan or the administration of the Plan or the property to be distributed under the Plan, or any other pre-petition or post-petition act or omission during the administration of the Debtors' estates or in contemplation of the Chapter 11 Cases, and in all respects, will be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided, however, that nothing in this Section 12.02 shall (i) be construed to exculpate any Entity from fraud, gross negligence, willful misconduct, malpractice, criminal conduct, misuse of confidential information that causes damages, or ultra vires acts as determined by a Final Order of the Court, or (ii) limits the liability of the professionals of the Debtors, the Post-Effective Date Debtors, the Plan Administrator, and any Committee to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility.**

**12.03.     Injunction.  Sections 12.01 and 12.02 of this Plan will also act as an injunction against any Entity commencing or continuing any action, employment of process, or act to collect, offset or recover any Cause of Action satisfied, released under this Plan, subject to the rights of the Plan Administrator, on behalf of the Creditors, to investigate and pursue any Cause of Action against any Entity under Section 12.01.**

12.04.     Guarantees and Claims of Subordination.

(a)     Guarantees.  The classification and the manner of satisfying all Claims under this Plan takes into consideration (i) the possible existence of any alleged guarantees by the Debtors of obligations of any Entity or Entities, and (ii) that the Debtors may be joint obligors with another Entity or Entities with respect to the same obligation.  The Holders of Claims will be entitled to only one distribution with respect to any given obligation of the Debtors.

(b)     Claims of Subordination.  To the fullest extent permitted by applicable law, all Claims and Interests in the Debtors, and all rights and claims between or

among Holders of Claims or Interests relating in any manner whatsoever to Claims or Interests, based on any contractual, legal or equitable subordination rights, will be terminated on the Effective Date in the manner provided in this Plan, and all such Claims, Interests and rights so based and all such contractual, legal and equitable subordination rights to which any Entity may be entitled will be irrevocably waived by the acceptance by such Entity (or, unless the Confirmation Order provides otherwise, the class of which such Entity is a member) of this Plan or of any distribution pursuant to this Plan. Except as otherwise provided in this Plan and to the fullest extent permitted by applicable law, the rights afforded and the distributions that are made in respect of any Claims or Interests hereunder will not be subject to levy, garnishment, attachment or like legal process by any Holder of a Claim or Interest by reason of any contractual, legal or equitable subordination rights, so that, notwithstanding any such contractual, legal or equitable subordination rights, each Holder of a Claim or Interest will have and receive the benefit of the rights and distributions set forth in this Plan.

Pursuant to Bankruptcy Rule 9019, and any applicable state law, and as consideration for the distributions and other benefits provided under this Plan, the provisions of this Section 12.04(b) will constitute a good faith compromise and settlement of any Causes of Action relating to the matters described in this Section 12.04(b) which could be brought by any Holder of a Claim or Interest against or involving another Holder of a Claim or Interest, which compromise and settlement is in the best interests of Creditors and Holders of Interests and is fair, equitable and reasonable. Pursuant to the Confirmation Order, this settlement will be approved by the Court as a settlement of all such Causes of Action. The Court's approval of this settlement pursuant to Bankruptcy Rule 9019 and its finding that this is a good faith settlement pursuant to any applicable state law, given and made after due notice and opportunity for hearing, will bar any such Cause of Action relating to the matters described in this Section 12.04(b) which could be brought by any Holder of a Claim or Interest against or involving another Holder of a Claim or Interest.

## ARTICLE THIRTEEN
## CONFIRMATION AND EFFECTIVE DATE

13.01. <u>Conditions to Entry of the Confirmation Order</u>. The following conditions must occur and be satisfied or waived in accordance with Section 13.03 of this Plan by the Debtors on or prior to the Confirmation Date:

(a) <u>Confirmation Order</u>. The Confirmation Order shall be in form and substance reasonably acceptable to the Debtors, CIT, and the Creditors' Committee, whose consent shall not be unreasonably withheld; and

(b) <u>Plan Administrator and Plan Administration Agreement</u>. The Creditors' Committee and CIT shall have agreed on and identified the Plan Administrator, and filed with the Court the Plan Administration Agreement. The Plan Administrator shall be agreed upon and selected by the Creditors' Committee and CIT, and shall be reasonably acceptable to the Debtors, whose consent shall not be unreasonably withheld. The Plan Administration Agreement shall be drafted by the Creditors' Committee, except for the Letter Agreement, which shall be fully adopted and incorporated into the Plan Administration Agreement and shall not be

amended or modified without the prior written consent of CIT and the Creditors' Committee, and shall be reasonably acceptable to the Debtors and CIT, whose consent shall not be unreasonably withheld.

        13.02.   <u>Conditions to Effective Date</u>. The following conditions must occur and be satisfied or waived in accordance with Section 13.03 of this Plan by the Debtors on or before the Effective Date for this Plan to be effective on the Effective Date:

        (a)   <u>Confirmation Order</u>. The Confirmation Order shall have become a Final Order;

        (b)   <u>Authorizations, Consents and Approvals</u>. All authorizations, consents and regulatory approvals in connection with the consummation of this Plan have been obtained and not revoked;

        (c)   <u>Reserve Funding</u>. The Reserve Funding shall have been established;

        (d)   <u>Effective Date</u>. The Effective Date shall have occurred on or before seventy-five (75) days after the Court enters the Confirmation Order, or such later date as the Debtors, CIT, and the Creditors' Committee have selected;

        (e)   <u>Sale Transaction</u>. The Sale Transaction shall have been approved by Final Order of this Court and consummated; and

        (f)   <u>Professionals' Fees</u>. Subject to the requirements of the Bankruptcy Code and any order establishing administrative procedures for compensation and reimbursement of Professionals and Creditors' Committee members and the terms contained in the Plan, (1) all Allowed due and unpaid fees and expenses of Professionals retained by the Debtors and the Creditors' Committee shall have been paid in full and (2) all fees and expenses not yet due and owing shall be funded through the Funding Reserve.

        13.03.   <u>Waiver of Conditions</u>. The Debtors or the Plan Administrator, as the case may be, upon CIT's and the Creditors' Committee's approval and consent, which shall not be unreasonably withheld, may waive one or more of the conditions precedent to the confirmation or effectiveness of this Plan set forth in Sections 13.01 and 13.02 of this Plan (other than Section 13.02(c) and 13.02(f)), without any other notice to the Court and without a hearing.

        13.04.   <u>Effect of Failure of Conditions</u>. If all the conditions to effectiveness and the occurrence of the Effective Date have not been satisfied or duly waived on or before the first Business Day that is more than seventy-five (75) days after the date the Court enters the Confirmation Order, or by such later date as is proposed by the Debtors, and approved, after notice and a hearing, by the Court, then upon motion by the Plan Administrator made before the time that all of the conditions have been satisfied or duly waived, the Confirmation Order will be vacated by the Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to consummation is either satisfied or duly waived before the Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant to the foregoing provision of this Plan, this Plan will be null and void in all respects, and nothing contained in this Plan will (a)

constitute a waiver or release of any Claims against or equity Interests in the Debtors or (b) prejudice in any manner the rights of the Holder of any Claim or equity Interest in the Debtors.

## ARTICLE FOURTEEN
## MISCELLANEOUS PROVISIONS

14.01.    <u>Court to Retain Jurisdiction</u>.  The business and assets of the Debtors shall remain subject to the jurisdiction of the Court until the Effective Date.  From and after the Effective Date, the Court shall retain and have exclusive jurisdiction of all matters arising out of, and related to the Chapter 11 Cases or this Plan pursuant to, and for purposes of, subsection 105(a) and section 1142 of the Bankruptcy Code and for, among other things, the following purposes:  (a) to determine any and all disputes relating to Administrative Expenses, Claims and Interests and the allowance and amount thereof; (b) to determine any and all disputes among creditors with respect to their Claims (c) to hear and determine any and all Causes of Action, including, without limitation, any right to setoff; (d) to consider and allow any and all applications for compensation for professional services rendered and disbursements incurred up to and including the Confirmation Date in connection therewith; (e) to determine any and all applications, motions, adversary proceedings and contested or litigated matters pending on the Effective Date and arising in or related to the Chapter 11 Cases or this Plan; (f) to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order; (g) to enforce the provisions of this Plan relating to the distributions to be made hereunder; (h) to issue such orders, consistent with section 1142 of the Bankruptcy Code, as may be necessary to effectuate the consummation and full and complete implementation of this Plan; (i) to enforce and interpret any provisions of this Plan; (j) to determine such other matters as may be set forth in the Confirmation Order or that may arise in connection with the implementation of this Plan; (k) to determine the amounts allowable as Administrative Expenses pursuant to section 503(b) of the Bankruptcy Code; (l) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Sale Transaction, and the Plan Administration Agreement, and any documents related or ancillary thereto; (m) to hear and determine any issue for which this Plan or any document related to or ancillary thereto requires a Final Order of the Court; (n) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code; (o) to hear any other matter not inconsistent with the Bankruptcy Code; and (p) to enter a final decree closing the Chapter 11 Cases.

14.02.    <u>Binding Effect of this Plan</u>.  The provisions of this Plan will be binding upon and inure to the benefit of the Debtors, the Post-Effective Date Debtors, the Plan Administrator, any Holder of a Claim or Interest, their respective predecessors, successors, assigns, agents, officers and directors and any other Entity affected by this Plan.

14.03.    <u>Authorization of Corporate Action</u>.  The entry of the Confirmation Order will constitute a direction and authorization to and of the Debtors or the Plan Administrator, as the case may be, to take or cause to be taken any corporate action necessary or appropriate to consummate the provisions of this Plan (including, dissolution of each of the Debtors hereto which shall be dissolved pursuant to Section 9.08 of this Plan), and all such actions taken or caused to be taken will be deemed to have been authorized and approved by the Court.  Any

corporate action required by the Debtors in connection with the Plan, will, as of the Effective Date, be deemed to have occurred and will be effective as provided in the Plan and will be authorized and approved in all respects without any requirement of further action under applicable law, regulation, order, or rule, including without limitation, any action by the security holders or directors of the Debtors or the Plan Administrator.

14.04.    <u>Withdrawal of this Plan</u>.  The Debtors reserve the right at any time prior to the entry of the Confirmation Order to revoke or withdraw this Plan.  If the Debtors revoke or withdraw this Plan then this Plan will be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtors or any other person, or an admission against interests of the Debtors, nor shall it prejudice in any manner the rights of the Debtors or any person in any further proceeding involving the Debtors.

14.05.    <u>Captions</u>.  Article and Section captions used in this Plan are for convenience only and will not affect the construction of this Plan.

14.06.    <u>Record Date for Voting Purposes</u>.  For purposes of determining Holders of Claims and Interests who are entitled to vote on this Plan, the record date shall be the date that the Court enters the Order approving the Disclosure Statement or such other date as determined by the Court in such Order.

14.07.    <u>Method of Notice</u>.  All notices required to be given under this Plan, if any, will be in writing and will be sent by first class mail, postage prepaid, or by a nationally recognized overnight courier:

If to the Debtors to:

Donnkenny, Inc.
1411 Broadway
New York, New York 10018
Attn.:  Mr. Daniel H. Levy
Chief Executive Officer

with copies to:
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York  10004-1980
Attn.:  Kalman Ochs, Esq.

If to the DIP Lenders to:

The CIT Group /Commercial Services, Inc.
1211 Avenue of the Americas,
New York, New York 10036
Attn.: Mr. Grover P. Reinle, Sr.
      Mr. George Edwards
      Michael Cleary, Esq.

with copies to:

Otterbourg, Steindler, Houston & Rosen, PC
230 Park Avenue
New York, New York 10169
Attn.: William M. Silverman, Esq.
      Jonathan N. Helfat, Esq.

If to the Creditors' Committee to:

Kronish Lieb Weiner & Hellman LLP
1114 Avenue of the Americas
New York, New York 10036-7798
Attn.: Lawrence C. Gottlieb, Esq.
      Christopher A. Jarvinen, Esq.

If to the Plan Administrator:

As set forth in the Plan Administration Agreement.

Any of the above may, from time to time, change its address for future notices and other communications hereunder by filing a notice of the change of address with the Court. Any and all notices given under this Plan will be effective when received.

14.08.    <u>Dissolution of any Committee</u>. On the Effective Date, any Committee will cease to exist and its members and employees or agents (including, without limitation, attorneys, investment bankers, financial advisors, accountants and other professionals) will be released from all further authority, duties, responsibilities and obligations relating to and arising from and in connection with the Chapter 11 Cases.

14.09.    <u>Amendments and Modifications to Plan</u>. This Plan may be altered, amended or modified by the Debtors before or after the Confirmation Date, as provided in section 1127 of the Bankruptcy Code.

14.10.    <u>Section 1125(e) of the Bankruptcy Code</u>.

(a)    The Debtors (and each of their respective Affiliates, agents, directors, officers, employees, advisors and attorneys) have, and upon confirmation of this Plan

shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

(b)     The Debtors (and each of their respective Affiliates, agents, directors, officers, employees, advisors, and attorneys) have, and upon confirmation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regards to the distributions under this Plan, and therefore are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.

14.11.    <u>Post-Confirmation Obligations</u>.  The Plan Administrator shall pay fees assessed against each of the Debtors' estates under 28 U.S.C. § 1930(a)(6) until entry of a final decree closing the Chapter 11 Cases.

14.12.    <u>Severability of Plan Provisions</u>.  If, prior to the Confirmation Date, any term or provision of this Plan is held by the Court to be invalid, void or unenforceable, the Court, at the request of Debtors, which request shall be made in accordance with Section 14.11 hereof, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.13.    <u>Successors and Assigns</u>.  The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor or assign of such entity.

14.14.    <u>Compromises and Settlements</u>.  Pursuant to Bankruptcy Rule 9019(a), the Debtors may compromise and settle various Causes of Action and/or claims that they may have against other Entities.  Up to and including the Effective Date the Debtors expressly reserve the right (with Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Causes of Action and/or claims that they may have against other Entities.  After the Effective Date, such right shall pass to the Plan Administrator pursuant to this Plan.

14.15.   <u>Waiver of Bankruptcy Rules 3020(e) and 7062</u>.  The Debtors may request that the Confirmation Order include:  (i) a finding that Bankruptcy Rules 3020(e) and 7062 shall not apply to the Confirmation Order, and (ii) authorization for the Debtors to consummate the Plan immediately after the entry of the Confirmation Order.

Dated:      New York, New York
                  May 12, 2005

Respectfully submitted,

DONNKENNY, INC., <u>et al</u>.

By:  /s/ _____
          Daniel H. Levy
          Chief Executive Officer

/s/ _____
Bonnie Steingart (BS-8004)
Kalman Ochs (KO-0918)
Christopher R. Bryant (CB-2237)
FRIED, FRANK, HARRIS, SHRIVER
 & JACOBSON LLP
Counsel for Debtors and
Debtors in Possession
One New York Plaza
New York, New York 10004
Tel:  (212) 859-8000
Fax:  (212) 859-4000

495315

**EXHIBIT A**

The Letter Agreement